We'll hear argument this morning in Case 16-111, Masterpiece Cakeshop v. Colorado Civil Rights Comm'n. Ms. Wagoner? Mr. Chief Justice, and may it please the Court, the First Amendment prohibits the government from forcing people to express messages that violate their religious convictions. Yet the Comm'n requires Mr. Phillips to do just that, ordering him to sketch, sculpt, and hand-paint cakes that celebrate a view of marriage in violation of his religious convictions. What if it's an item off the shelf? That is, they don't commission a cake just for them, but they walk into the shop, they see a lovely cake, and they say, we'd like to purchase it for the celebration of our marriage tonight. The Colorado law would prohibit that. Would you claim that you are entitled to an exception? Absolutely not. The compelled speech doctrine is triggered by compelled speech, and in the context of a pre-made cake, that is not compelled speech. Mr. Phillips is happy to sell anything in his store, including... Well, didn't he express himself when he made it? Yes, he did express himself when he made it, and the purpose for which he expressed it is important to the compelled speech doctrine and how it applies. I'm sorry, he did refuse to sell. But could I get the answer to the question? So if you agree that it's speech, then why can he not refuse to sell the cake that's in the window, according to Justice Ginsburg's hypothetical? Well, in the context of it's already been placed in the stream of commerce in a public accommodation setting, his speech has been completed. He intended to speak through that cake with the purpose of whatever it was when he created it. In contrast, though, when he has a different purpose and is expressing a message through a cake, it would render a different result. I'm sorry, didn't he refuse to sell cupcakes that he sells regularly to the public to some same-sex couples who intended to marry? That allegation was never involved in the complaints, the formal charges, the ALJ's decision. But I thought, I'm a little bit surprised by what you're saying, because your briefs seem to suggest differently, that the couple was looking at his already pre-designed cakes that he appears to sell without any customization, and they sat down with him and he said, I don't supply cakes of any kind to gay couples. So I thought this cake was about his refusal to supply a cake for any wedding ceremony. Justice Sotomayor, that's not how he responded to the couple. The couple came in and they requested a custom cake for their wedding. At that point, they brought in a folder with all kinds of designs they wanted to discuss and ended up purchasing a rainbow-layered cake, or received a free rainbow-layered cake, which certainly is expression. The order below requires Mr. Phillips also to include words and symbols on his cakes. It's that broad. So if, for example, Mr. Phillips had used a Bible verse on a cake in the past, he would be compelled to use that Bible verse in a different context. What does it say? I thought that the requirement was he supply a custom-made cake, as he would to any other shopper, but that he didn't have to convey somebody else's message, that is, he didn't have to write anything on the cake. In Petitioner's Appendix 57A, the order is provided, and that order requires him to provide anything that he would provide on a cake in another setting for a marriage between a man and a woman, which includes words and images that he would provide. Well, suppose we exclude that and say, let's make the assumption that if he makes custom-made cakes for others, he must make it for this pair, but he doesn't have to write anything for anybody. He doesn't have to write a message that he disagrees with. Well, this Court has recognized in Hurley, as well as in other decisions, that artistic expression doesn't need to include words and symbols to express a message or to be protected speech. Well, just one more thing, and then we'll leave this part alone, at least as far as I'm interested. Suppose the couple goes in and sees the cake in the window, and the cake has a biblical verse. Does he have to sell that cake? Under our theory, he would need to sell that cake because he's already created that cake with the message that he intended for it, but we're drawing the line prior to the compulsion. There can be no compulsion of speech. If the Court were to choose to draw that line in a different place and protect more speech, there certainly is precedent for that. But under the compelled speech doctrine, when someone comes in and requests speech, if that speech has already been created, then that would not be compelled. There's no compulsion of speech, but if he is required to sell a cake in the window with the message already on it, it is compelling him to associate that message with the ceremony, and I thought that was something to which you objected. There would possibly be an expressive association claim and potentially a free exercise claim if he was delivering the cake and there was other involvement. But in terms of the Court's application of the compelled speech doctrine, the compulsion is the trigger for that. But the Court could draw that line at an earlier place and not force him to sell that cake. It's a question that I started out with. I wanted to clarify that what you're talking about is a custom-made cake. You are not challenging his obligation to sell his ordinary wares, his, as you put it, already made wares. Not at all, and in fact, Mr. Phillips offered the couple anything in his store as well as offered to sell additional cakes, custom cakes, that would express other messages. You mentioned you brought up Hurley, but in Hurley, the parade was the event. It was the speech parade. At a wedding ceremony, I take it, the speech is of the people who are marrying and perhaps the officiant.  The artist speaks, Justice Ginsburg. It's as much Mr. Phillips' speech as it would be the couple's. And in Hurley, the Court found a violation of the compelled speech doctrine. Who else, then? Who else is an artist? Say that the person who does floral arranging owns a floral shop. Would that person also be speaking at the wedding? If they are custom-designed arrangements and they're being forced to create artistic expression, which this Court determines is a message. How about the person who designs the invitation? Yes. The invitation to the wedding or the menu for the wedding dinner? Certainly, words and symbols would be protected speech, and the question would be whether the objection is to the message provided or if it's to the person. So the jeweler? It would depend on the context, as all free speech cases depend on what is the jeweler asked to do. The hairstylist? Absolutely not. There's no expression of protected speech in that kind of context. Why is there no speech in creating a wonderful hairdo? Well, it may be artistic. It may be creative. But what the Court asks when there's... A makeup artist? No. What the Court would ask... Quote an artist. The makeup artist. The makeup artist may, again, be using creativity and artistry. But when this Court is looking at whether speech is involved, it asks the question of, is it communicating something, and is it analogous to other protected forms of speech? I'm quite serious, actually, about this, because, you know, the makeup artist, I think, might feel exactly as your client does, that they're doing something that's of great aesthetic importance to the wedding and that there's a lot of skill and artistic vision that goes into making somebody look beautiful. And why wouldn't that person or the hairstylist, why wouldn't that also count? Because it's not speech. And that's the first trigger point. I mean, some people might say that about cakes, you know. But you have a view that a cake can be speech because it involves great skill and artistry. And I guess I'm wondering if that's the case. You know, how do you draw a line? How do you decide, oh, of course, the chef and the baker are on one side, and you said, I think the florist is on that side, the chef, the baker, the florist, versus the hairstylist or the makeup artist? I mean, where would you put a tailor? A tailor who makes a wonderful suit of clothes. Where does that come in? Your Honor, the tailor is not engaged in speech, nor is the chef engaged in speech. But again, this court... Well, the baker's engaged in speech, but the chef is not engaged in speech? The test that this court has used in the past to determine whether speech is engaged in is to ask if it's communicating something, and if whatever is being communicated, the medium used, is similar to other mediums that this court has protected. It depends on the question, when have we ever given protection to a food? The primary purpose of a food of any kind is to be eaten. Now, some people might love the aesthetic appeal of a special dessert and look at it for a very long time. But in the end, its only purpose is to be eaten. And the same with many of the things that you've mentioned. A hairdo is to show off the person, not the artist. When people at a wedding look at a wedding cake and they see words as one of the amici here, the pastry chef said, there was a gentleman who had upset his wife and written some words that said, I'm sorry for what I did, something comparable. And the chef was asked, the cake maker was asked, was that affiliated with you? And she said, no. It's affiliated with the person who shows the cake at their wedding. It's what they wish to show. So how is this your client's expression? And how can we find something whose predominant purpose is virtually always to be eaten? Call it a medium for expressive expression. Mind you, I can see if they create a cake and put it in a museum as an example of some work of art. That might be different because the circumstances would show that they want this to be affiliated with themselves. But explain how that becomes expressive speech, that medium becomes expressive speech. Certainly not all cakes would be considered speech. But in the wedding context, Mr. Phillips is painting on a blank canvas. He is creating a painting on that canvas that expresses messages and including words and symbols. You know, the other night I had some people over, and one of them brought a box of cupcakes. And one of the cupcakes was smashed against the box. That was the only cupcake not eaten. Now, I suspect that one of the reasons is the others were so much more attractive whole. There is creation in serving food, in creating any type of edible product. There are sandwich artists now. There are people who create beauty in what they make, but we still don't call it expressive and entitled to First Amendment protection. No, but when we have someone that is sketching and sculpting and hand designing something that is creating a temporary sculpture that serves as a centerpiece of what they believe to be a religious wedding celebration, that cake expresses a message. What would you say about an architectural design? Is that not entitled to First Amendment protection because one might say that the primary purpose of the design of a building is to create a place where people can live or work? Precisely. In the context of an architect, generally that would not be protected because buildings are functional, not communicable. You mean an architectural design is not protected? No, generally speaking, architecture would not be protected. In other words, Mies or Michelangelo or someone is not protected when he creates the Laurentian steps, but this cake baker is protected when he creates the cake without any message on it for a wedding. Now that really does baffle me, I have to say. Well, I did say generally no in terms of architecture. All right, well then what is the line? That's what everybody's trying to get at because obviously we've all gone to a Mexican restaurant that has this fabulous mole, specially made for the people at the table to show what important and wonderful evening it was, which it did in part. There are all kinds of restaurants that do that. And maybe Ali's barbecue, you know? Maybe Ali thought he had special barbecue. All right, now the reason we're asking these questions is because obviously we want some kind of distinction that will not undermine every civil rights law from the year two, including the African Americans, including the Hispanic Americans, including everybody who has been discriminated against in very basic things of life. Food, design of furniture, homes, and buildings. Now that is, I think, the point of the question, and I've tried to narrow it and specify it to get your answer. Thank you, Justice Breyer. In terms of the test that would be applied, the court would first ask under the speech analysis, is there speech? And by asking that, you're asking, is there something that's being communicated and is it a protection? And there isn't one of the people I mentioned who doesn't think he's communicating something. What do you think they're doing when they're making the esal or the building? It's not just about what the individual thinks they're communicating, though. This court also routinely makes that inquiry in all kinds of situations, in all free speech cases. Second, though, the Hurley framework provides a framework for this court to make those decisions and to protect individuals. The way that it does that is it asks, is the individual who's being compelled to speak objecting to the message that's contained in that speech or the person? And that's usually a very obvious inquiry. Would that belief that expresses speech trump public accommodation laws against discrimination or protecting customers from race? Yes or no? This court has never compelled speech in the context of race, but if it were ever to do so... Oh, it didn't in Newman v. Piggy? Not in terms of compelling speech. He claimed that he was religious, that he opposed serving blacks because it mixed the races, and we basically refused both his free expression and his pre-exercise clauses. So are you saying that your rule now would trump protection against race discrimination? Respectfully, Your Honor, I don't think this court has ever compelled speech... I'll read Newman. Answer my question. Is your theory that public accommodation laws cannot trump free speech or free exercise claims in protecting against race discrimination? That is not my theory. That would be an objection to the person, and the court may find a compelling interest in that. If I could just, sorry, very quickly. I know you're late, and I'm sure you'll be given a little bit of an adjustment. Is that okay? I guess I just didn't understand your answers to Justice Sotomayor's question. Same case or not the same case if your client instead objected to an interracial marriage? Very different case in that context. Not the same. How about if he objected to an interreligious? Similar case, assuming that the objection... Similar to what? Similar to Mr. Phillips. That would be protected under the compelled speech doctrine if the objection is to the message being conveyed in that expression. You're just saying race is different? I'm saying... I mean, I don't want to put words in your mouth. I just really, you know, just want to know the answer. I think race is different for two reasons. One, we know that that objection would be based to who the person is rather than what the message is. And second, even if that were not the case, the court could find a compelling interest in the race inquiry just as it did in the Pena-Rodriguez case. So how about disability? I'm not going to serve cakes to two disabled people because God makes perfect creations. And there are some religions who believe that. So how about there? I'm not aware of any religions that believe that, but if they did, that would clearly be based on who the person is and not the message in the final product that they're being asked to create. Well, your client was saying that providing a cake to a same-sex couple was against his free expression rights and his free exercise rights because he cannot celebrate that kind of marriage. Mr. Phillips is looking at not the who but the what in these instances, what the message is. And for 25 years... Well, actually, counsel, that seems to be a point of contention. The state seems to concede that if it were the message, your client would have a right to refuse. But if the objection is to the person, that's when the discrimination law kicks in. That's footnote 8 of the Colorado Court of Appeals decision. I know you know this. So what do you say to that, that actually what is happening here may superficially look like it's about the message, but it's really about the person's identity? I would say that in footnote 8, the court applies an offensiveness policy which allows the state the discretion to decide what speech is offensive and what is not, and it did not apply that in a fair way to Mr. Phillips, which creates viewpoint discrimination as well as a violation of the free exercise clause. But what's deeply concerning is that is not the theory that respondents are submitting to this court today. They believe that they can compel speech of filmmakers, oil painters, and graphic designers in all kinds of contexts. If there are no further questions, I would like to reserve the balance of my time. We'll afford you the full rebuttal time. Thank you. General Francisco? Mr. Chief Justice, and may it please the court, this case raises an important issue for a small group of individuals, namely whether the state may compel business owners, including professional artists, to engage in speech in connection with an expressive event like a marriage celebration to which they are deeply opposed. In those narrow circumstances, we believe the free speech clause provides breathing space. How narrow is it? Consider Justice Kagan's question. I mean, we have gotten the answer that the florist is in the same place as the cake maker, so is the person who designs the invitations and the menus. I don't see a line that can be drawn that excludes the makeup artist or the hair stylist. Well, Your Honor, that's of course a question that the court has to answer at the threshold of every free speech case, is the thing that's being regulated something we call protected speech. I think the problem for my friends on the other side is that they think the question doesn't even matter, so they would compel an African-American sculptor to sculpt a cross for a Klan service. But the problem for you is that so many of these examples and photographer can be included do involve speech. It means that there's basically an ability to boycott. Well, Your Honor, I think that what it boils down to is that in a narrow category of services that do cross the threshold into protected speech, and I do think it's a relatively narrow category, you do have protection. For example, I don't think you could force the African-American sculptor to sculpt the cross for the Klan service just because he'd do it for a... If you prevail, could the bakery put a sign in his window? We do not bake cakes for gay weddings. Your Honor, I think that he could say he does not make custom-made wedding cakes for gay weddings, but most cakes... You would not force to do that an affront to the gay community. Your Honor, I agree that there are dignity interests at stake here, and I would not minimize the dignity interests to Mr. Craig and Mr. Mullins one bit, but there are dignity interests on the other side here too. Sometimes it's not just dignity. A couple of the briefs, one of the amici briefs, pointed out that most military bases are in isolated areas far from cities, and that they're in areas where the general population, service population, is of one religion or close to one religious belief. So where there might be two cake bakers, they'd name a couple of military bases like that, or two florists or one photographer, a very small number of resources. And in those situations, they posit, and I don't think probably wrongly, that it may come to pass where the two cake bakers will claim the same ascension here. So how do we protect the military men and women who are of the same sex, who want to get married, in that town, because that's where all their friends are, because the base is there, all right? How do we protect those people? And Your Honor, I think that is precisely the situation where the state would be able to satisfy heightened scrutiny because their interest in providing access to goods and services would be narrowly tailored. Isn't that the same for everybody? Meaning, look, we live in a society with competing beliefs, and all of our cases have always said where LGBT people have been, you know, they've been humiliated, disrespected, treated uncivilly. The briefs are filled with situations. The gay couple who was left on the side of the highway on a rainy night. People who have been denied medical treatment, or whose children have been denied medical treatment because the doctor didn't believe in same-sex parenthood, etc. We've always said in our public accommodations law, we can't change your private beliefs. We can't compel you to like these people. We can't compel you to bring them into your home. But if you want to be a part of our community, of our civic community, there's certain behavior, conduct, you can't engage in. And that includes not selling products that you sell to everyone else, to people simply because of their either race, religion, national origin, gender, and in this case, sexual orientation. So we can't legislate civility and rudeness, but we can and have permitted, as a compelling state interest, legislating behavior. So why is not selling to one group as opposed to another not behavior? And, Your Honor, if I could respond, I think it's because here we have speech involved, in this case it's essentially the flip side of the Hurley case. In Hurley, we couldn't force a parade to include a particular speaker. That was a private parade. And here, Your Honor, we don't think you can force a speaker to join the parade. Because when you force a speaker to both engage in speech and contribute that speech to an expressive event that they disagree with, you fundamentally transform the nature of their message from one that they want to say to one that they don't want to say. How about if it's a question of race? There's a certain irony in here, because one of the things that anti-discrimination and public accommodation is supposed to do is to protect religion, minority religion. So you have already said that you put race in a different category, right? Yes, Your Honor. How about gender? Well, Your Honor, I think that race is particularly unique, because when it comes to racial discrimination... Well, I asked you what about... I think... I have your answer on race. How about gender? How about national origin and religion? I think pretty much everything but race would fall in the same category. But as this Court made clear in the Bob Jones case, the IRS could withdraw tax-exempt status from a school that discriminated on the basis of interracial marriage, but I'm not at all sure that it would reach the same result if it were dealing with a Catholic school that limited student housing to opposite-sex couples only. I think when you get to this case, if you agree with our test, and I know that I have a little bit of an uphill battle in convincing some of you of that, if you agree with our test, I think the heightened scrutiny standard is particularly easy, because they're the same interests at stake as were at stake in Hurley. It seems as though there are kind of three axes in which people are asking you, what's the line? How do we draw the line? So one axis is what we started with, like what about the chef and the florist and everybody else that participates in a wedding. A second axis is, well, why is this only about gay people? Why isn't it about race? Why isn't it about gender? Why isn't it about people of different religions? So that's a second axis. And there's a third axis, which is, why is it just about weddings? You say ceremonies, events. What else counts? Is it the funeral? Is it the bar mitzvah or the communion? Is it the anniversary celebration? Is it the birthday celebration? So there are all three of these that suggest like, whoa, this doesn't seem like such a small thing. And so let me just give you one hypothetical, and then you can answer more broadly. So I'll just pick one of those. It's like, how about a same-sex couple goes to a great restaurant with a great chef for an anniversary celebration, and the great chef says, I don't do this for same-sex couples. How about that? So, Your Honor, if I could answer that question, starting out with another example that illustrates the point. Well, I'd like my example, too. So in your example, I would first say, one, there's no speech involved, and two, there's probably no expression of intent. No, there is. The chef is expressing something about how he feels about same-sex couples and same-sex marriage. He doesn't want to celebrate the anniversary of a same-sex marriage. Just like the baker doesn't want to celebrate a same-sex marriage. And that's where I go to something that I think that my friends on the other side have to deal with is often is the case in First Amendment law. You're dealing with something that everybody clearly agrees is speech. And what makes this case difficult is because we're kind of on that line. Is it speech or is it not speech? We think it's on the speech side of the line. But take, for example, the sculptor who does not want to sculpt that clock. Mr. General, really, I mean, could we just – I guess I'd like an answer to my hypothetical. Sure. So the answer to your hypothetical is, as this Court has repeatedly said, not everything that expresses a message is speech. I think when it comes to – So the baker is speech, but the great chef who's like everything is perfect on the plate, and it's a work of art. It's a masterpiece. Well, Your Honor, you have to confront that issue in every First Amendment case. General, my colleagues, I think, go to more elite restaurants than I do. Same here, Your Honor. I think that if in my dreams I could go to a Michelin, I don't know, one-tenth star, I don't know, two-star restaurant, and there was a menu of wonderful dishes created by the chef with great creativity, and I said, I really don't want any of these. Here's the recipe. I want you to make this for me. Do you think he'd do that? Probably not, Your Honor, but I think the critical question – He's certainly not – He creates something when he makes – when he devises those dishes, and when somebody comes in and asks to buy one, he is just mechanically producing another example of the thing that he created earlier. Yes, Justice, Mr. Chief Justice. Why don't you take an extra five minutes, and I'll accord the same to your friends. Well, thank you. And so what happens, though, in every free speech case, you've got to make that initial cut. Does it cross the line into protected speech? And if it does, and I understand – Okay, how about the same cake? If you don't – if you want to – as I understand it, you want to treat the chef differently from the baker, but let's say the same cake, and a couple comes in, a same-sex couple, and says it's our first-year anniversary, and we would like a special cake for it. Can he then say no? No? Well, Your Honor, if it's the exact same cake and it crosses that threshold into speech, I would say – It's a great cake. What do you mean, is it the exact same cake? No, what I'm saying is if it's the same type of highly sculpted, stylized cake that Mr. Phillips makes, such that, in our view, it crosses the line into speech, then you can't force him to create that any more than you can force the sculptor. So, General, what is the line? How would you have this court draw the line? That's a lot of specifics, but I'd appreciate a more abstract general rule that the government suggests. I think there are a couple of ways to draw that line, and this is something that a court has to struggle with in a lot of cases. I think the first way to draw that line is you analogize it to something that everyone regards as traditional art, and everyone agrees is protected speech. Like the Jackson Pollock. Exactly. And here you have a cake that is essentially synonymous with a traditional sculpture, except for the medium used. But I also think that the Second Circuit's decision in the Master Vincenzo case provides a good and workable standard when you've got something that is part art and part utilitarian. And what the Second Circuit asks is, is it predominantly art or predominantly utilitarian? And here, people pay very high prices for these highly sculpted cakes, not because they taste good, but because of their artistic qualities. I think the more important thing... In fact, I have yet to have a wedding cake that I would say tastes great. And, Your Honor, my wedding cake, the top of it is still sitting in our freezer, and I'm sure it no longer tastes great. But I think the point is, when you cross that threshold into free speech, the question is, can you compel somebody to create and contribute speech to an expressive event that they approve? Is it a predominant purpose test, or is it... Would you say it's a predominant purpose or a predominant effect? How would you characterize that? So, if you're talking about the line between speech and non-speech, with the item that's part utilitarian and part art, I'd say, is it predominantly expressive or predominantly utilitarian? In its purpose or its effect on others? I think both, and I think one of the key factors that the Second Circuit looks to, it looks to a bunch of different factors, but one factor is price. Are people paying for the utilitarian side of it, or are they paying for the artistic side of it? Somebody comes in, it's a baker who's an atheist and really can't stand any religion, and somebody comes in and says, I want one of your very, very special, special cakes for a First Communion or for a Bar Mitzvah. And the baker says, no, I don't do that. I don't want my cakes to be used in the context of a religious ceremony. Well, and again, I think if you apply these tests, you first have to decide whether... Well, and what I'm saying is that when you apply these tests, you first have to decide if the cake rises to the level of speech. It's a special, special cake. Well, you know, if so, and it rises to the level of speech, then I think he has a claim just like that same baker could refuse to sculpt that cake. Your answer, I think, is the same question going on in different forms. Forget the doctrine for a minute. There's a category of people called artisans. An artisan is a kind of artist. They're in many fields. They're also people who are discriminated against. And we are in a country of minorities. There are many different groups that have been discriminated against. For many years, Congress has passed laws saying, at least to the artisans, you cannot discriminate on the basis of race, religion, da-da-da, sexual orientation. If we were to write an opinion for you, what would we have done to that principle? And, of course, the concern is that we would have caused chaos with that principle across the board because there is no way of confining an opinion on your side in a way that doesn't do that. So tell me how. Well, Your Honor, I think that the way you do it is because none of these court cases has ever involved requiring somebody to create speech and contribute that speech to an expressive event to which they are deeply opposed. And if I could go back to my example, when you force that African-American sculptor to sculpt that cross for a Klan service, you're transforming his message. He may want his cross to send the message of peace and harmony. By forcing him to combine it with that expressive event, you force him to send a message of hate and division. What would the government's position be if you prevail in this case, the baker prevails in this case, and then bakers all over the country received urgent requests, please do not bake cakes for gay weddings, and more and more bakers began to comply. Would the government feel vindicated in its position that it now submits to us? Your Honor, I think in that case, the case for strict scrutiny would be much stronger because you'd be able to show that the application of the law is narrowly tailored to the government's interest in ensuring access. Here, of course, you have these products that are widely available from many different sources. And I would submit, just to finish up, that if you were to disagree with our basic principle, putting aside the line about whether a cake falls on speech or non-speech side of the line, you really are envisioning a situation in which you could force, for example, a gay opera singer to perform at the Westboro Baptist Church just because that opera singer would be willing to perform at the National Cathedral. And the problem is when you force somebody not only to speak, but to contribute that speech to an expressive event to which they are deeply opposed, you force them to use their speech to send a message that they fundamentally disagree with. And that is at the core of what the First Amendment protects our citizenry against. Thank you, General. Mr. Yarger? Thank you, Mr. Chief Justice, and may it please the Court. A decade ago, Colorado extended to LGBT people the same protections used to fight discrimination against race, sex, and a person's faith. Masterpiece Cake Shop is a retail bakery that is open to the public and subject to the Colorado Anti-Discrimination Act. Yet petitioners claim that they can refuse to sell a product, a wedding cake of any kind and any design, to any same-sex couple. Take an organization, I think they're in many different faiths, but Catholic Legal Services. They provide pro bono legal representation to people who are too poor to avoid it, and they provide it to people of all different faiths. So let's say someone just like respondents here, except needing the pro bono assistance, goes into Catholic Legal Services and says, we want you to take this case against Masterpiece Cake Shop. And the people at the lawyers say, well, we're not going to because we don't support same-sex marriage. Are they in violation of the Colorado law? No, Chief Justice, Mr. Chief Justice, they are not. Refusing to offer a particular service in that case when they wouldn't provide it to any other customer? No, no, they would provide it if a heterosexual couple comes in and says, we need particular services in connection with our marriage. They would provide it. It's only because, and they say this, it's only because it's a same-sex marriage that we're not going to provide pro bono legal services to you. In the sense of a services regarding maybe... Something in connection with the marriage. You know, they're having a, whatever, a contract dispute with somebody in connection with their marriage, and the lawyer says, we're not going to provide services in connection with same-sex marriage because we have a religious objection to that. Mr. Chief Justice, I think there's an initial question that's asked in all of these cases, and it's the way that states have been resolving these questions for literally 100 years, and the question is, is this entity operating in the way of a retail store in the sense that it... No, no, it clearly is covered by Colorado's law. It's not primarily religious. It's primarily legal. It's provided to all faiths, and there's nothing in the law that I can see that says it's limited to for-profit organizations. And, Your Honor, again, I think the question's going to be, is that operating in the sense of a retail store? If it is, then yes. A state can require someone offering a service to give the same services regardless of the protected characteristics of the customer. So Catholic legal services would be put to the choice of either not providing any pro bono legal services or providing those services in connection with the same-sex marriage. If it is operating in the same way as a retail store, I think... Under Colorado law, are they or are they not? I don't... I can't answer that question. What facts do you need besides the ones I've given? I would have to understand what the purpose and the history is of that entity choosing customers and how it works. If there's genuine collectivity... They have taken every other customer to date except this is the first time someone's come in and wants legal services in connection with a same-sex marriage, and they say we're not going to do it because, as a religious matter, we're opposed to same-sex marriage. And, Your Honor, I think... I think if they were operating like a retail store like that, then Colorado would have the ability to regulate them. Well, the Chief Justice has introduced the question of the free exercise clause in this case. We didn't talk about it earlier. And perhaps you want to get on his speech. But in this case, pages 293 and 294 of the petition appendix, the Commissioner Hess says that freedom of religion used to justify discrimination is a despicable piece of rhetoric. Did the Commission ever disavow or disapprove of that statement? There were no further proceedings in which the Commission disavowed or disapproved of that. Do you disavow or disapprove of that statement? I would not have counseled my client to make that statement. Do you now disavow or disapprove of that statement? I do, yes, Your Honor. I think I need to make clear that what that Commissioner was referring to was the previous decision of the Commission, which is that no matter how strongly held a belief, it is not an exception to a generally applicable anti-discrimination law. And if the assertion that what is engaging in his speech is enough to overcome that law, you're going to face a situation where a family portrait artist can say, I will photograph any family, but not when the father is wearing a yarmulke, because I have a sincere objection to the Jewish faith. That would be discrimination. Suppose we thought that in significant part at least one member of the Commission based the Commissioner's decision on the grounds of hostility to religion. Could your judgment then stand? Your Honor, I don't think that one statement by the Commissioner, assuming it revealed bias. Suppose we thought there was a significant aspect of hostility to religion in this case. Could your judgment stand? Your Honor, if there was evidence that the entire proceeding was begun because of an intent to single out religious people, absolutely that would be a problem. But this is a complaint filed by a couple. How many Commissioners are there? Excuse me, Justice Sotomayor. I'd like you to answer Justice Kennedy's question. How many Commissioners are there? There are seven Commissioners, Your Honor. All right. If there was a belief, not yours, stop fighting the belief, except the hypothetical, that this person was improperly biased, what happens then? I think that's what Justice Kennedy is asking. If there is one person that's improperly biased? One of the Commissioners is improperly biased. I think you're going to have to ask whether the complaint filed with Division, which was filed by a customer who referred to a bakery to receive a product, and the ALJ and the Commission and the appeal were all biased in the sense that this was a proceeding meant to single out a religious person for his views, and that is not the fact here. But you'd agree that would be a problem. In the context of courts, I think it's not just where you have a three-judge panel and it turns out one judge should have been disqualified for whatever reason. They don't say that, well, the vote, there are two still, so it doesn't change the result, because it's a deliberative process. The idea is, well, the one biased judge might have influenced the views of the other. And, Your Honor, again, I don't think that that particular phrase, I wouldn't advise my client to make that statement, but it was referring back to the previous decision where the Commissioner fully debated the issue. You actually have a second Commissioner who also said that if someone has an issue with the laws impacting his personal belief system, he has to look at compromising that belief system, presumably, as well, right? And, yes, Your Honor, that's the same principle that this Court recognizes. But a second Commissioner. Cases like United States v. Lee. So we have two Commissioners out of seven who've expressed something along these lines. I don't agree that what was expressed in the record reveals the kind of bias that existed in cases like the Church of the Law of the Bible and Life. What if we disagree? What if we disagree with you? Then what follows? I think you have to do that analysis and decide whether this proceeding was engineered in a way to single out people with a certain faith, and they're not. The law would apply to protect people. I see that. The reason I want you to continue this is that many of the civil rights laws, not all the public accommodations laws, though, there are exceptions. Like, for example, with housing a person's own room, for example. And what people are trying to do with exceptions is take the thing you're worried about, whether they're genuine, sincere religious views or whatever it is, and minimize the harm it does to the principle of the statute while making some kind of compromise for people with sincere beliefs on the other side. And we find that in a lot of them. But that's primarily a legislative job. And my impression of this is there wasn't much effort here in Colorado to do that. And my problem is, can we do that in any way, or is there any way to get to a place that without harming the law and its object, which is fine, you can have narrow kinds of exceptions for sincere, et cetera. Do you see what I'm driving at? And I can't think of a way to do it. Maybe you can't think of a way to do it. But I thought it's worth asking. Justice Breyer, I do not agree that this law, which was passed in 2008 after literally a decade in the wake of Romer, was not an attempt sincerely to hear from all sides about a question of whether to grant the same protections to people who are discriminated based on race or faith to people of the GLBT community. One thing that's disturbing about the record here, in addition to the statement that Justice Kennedy read, which was not disavowed at the time by any other member of the commission, is what appears to be a practice of discriminatory treatment based on viewpoint. The commission had before it the example of three complaints filed by an individual whose creed includes the traditional Judeo-Christian opposition to same-sex marriage, and he requested cakes that express that point of view. And there were bakers who said, no, we won't do that because it is offensive. And the commission said, that's okay. It's okay for a baker who supports same-sex marriage to refuse to create a cake with a message that is opposed to same-sex marriage. But when the tables are turned and you have a baker who opposes same-sex marriage, that baker may be compelled to create a cake that expresses approval of same-sex marriage. Justice Alito. Counselor, in that case. Maybe you could answer Justice Alito's question. Yes, Mr. Chief Justice. The facts of that case are that someone walked into a bakery and wanted a particular cake with particular messages on it that that bakery wouldn't have sold to any other customer. Mr. Phillips would not be required to sell a cake to a gay couple that he wouldn't sell to his other customers. What he said in this case. Mr. Phillips would not. Do you disagree with the fact that he would not sell to anybody a wedding cake that expresses approval of same-sex marriage? What he may not do as a public accommodation. Do answer that question. Yes, Your Honor. Is decide that he won't sell somebody a product that he would otherwise sell because in his view the identity of the customer changes the message. No, he didn't say that. He said the message. He said the message. Well, and the message in this case, Your Honor, depended entirely on the identity of the customer who was ordering the cake. Let's assume this couple did come in and wanted the rainbow cake. Yes. And this gentleman says one of two things. If you're same-sex, I'm not going to provide you with a rainbow cake. Or I don't create rainbow cakes for weddings because I don't believe in same-sex marriage. I'm not going to sell it to you. I'm not going to sell it to a heterosexual couple. I just don't want to be affiliated with that concept of rainbowness at a wedding, any kind of wedding. So what are the differences in treatment? Justice Sotomayor, in that latter case, if that was truly a product he wouldn't sell to any other customer, he would not have to sell it to this customer. But if it's a question of a cake he would sell to any other customer, he cannot say I have a very strong objection to interracial or interfaith marriages and I don't want to send a message about those events, and so I'm not going to sell it to you. That's discrimination and it wouldn't be appropriate in a Colorado Congress. That's a First Amendment objection. Counselor, tolerance is essential in a free society. Tolerance is most meaningful when it's mutual. It seems to me that the state in its position here has been neither tolerant nor respectful of Mr. Phillips' religious beliefs. And, Your Honor, I don't agree. And because accommodation is quite possible, we assume there were other shops, other good bakery shops that were available. Your Honor, I don't agree that Colorado hasn't taken very seriously the rights of those who wish to practice their faith. I urge you to read the legislative history that culminated in literally 10 years of debate about how to deal with this question and what the legislature decided after hearing from the faith community, after making an exception for places of worship and making other exceptions, decided we can't make exceptions here for same-sex people who deserve the same protections if we wouldn't make those same exceptions for discrimination based on race and sex and religion. Can a baker do this? Could the baker say, you know, there are a lot of people I don't want to serve, so I'm going to affiliate with my friend Smith, who's down the street, and those people I don't want to serve, Smith will serve. Is that legal? Would that be legal under Colorado law? That would be a kind of accommodation so they get the cake? It would be, Your Honor. It would be legal? No, no. It would be illegal? You cannot turn away from your storefront if you're... It's a joint venture. I have a regular affiliation with Smith. Smith and I work together. I serve the people he doesn't like. He serves the people I don't like. Does that violate the law? I don't... I would say that there is a possibility that that does not violate the law if there's not some other pretext there to ensure that a disfavored class of customers receives lesser service, and that's always a question in a case like this. Does it make a difference? Was same-sex marriage permitted in Colorado at the time of these events? It was not, Your Honor. Does that make a difference? I don't think it does, Your Honor. Could he have said, I'm not going to make a cake for, you know, celebrating events that aren't permitted in Colorado? Well, Mr. Chief Justice, may I answer? You have five more minutes. Oh. If you want. I'll have to think about that, Your Honor, but in the meantime, there was nothing illegal about two gay people in 2012 in Colorado expressing their commitment to each other and celebrating that commitment with their loved ones. Would Colorado be required to give full faith and credit to the Massachusetts marriage? Well, it certainly would today, Your Honor. But it wouldn't at the time. No, it wouldn't not at the time. This is very odd. We're thinking about this case as it might play out in 2017, soon to be 2018, but this took place in 2012. So if Craig and Mullins had gone to a state office and said, we want a marriage license, they would not have been accommodated. If they said, well, we want you to recognize our Massachusetts marriage, the state would say, no, we won't accommodate that. Well, we want a civil union. Well, we won't accommodate that either. And yet, when he goes to this bake shop and he says, I want a wedding cake, and the baker says, no, I won't do it, in part because same-sex marriage was not allowed in Colorado at the time, he's created a grave wrong. How does all that fit together? Your Honor, again, the decision by this bakery was it wouldn't sell any product. No, that's not right. That's not right, Mr. Yargren. It's a disturbing feature of your brief because this case was decided on summary judgment, and therefore you have to view the facts in the light most favorable to Mr. Phillips. And the only thing he admitted, and what was said in the list of undisputed facts, was he would not create. He was very careful to use the word create. Is that wrong? That's not incorrect, Your Honor. What he has said is that all of his wedding cakes are custom-made. And so what he said is that he would have a right to refuse that service to anyone whose identity in his view means that the message has changed and he does not want to sell it to them. In the questioning of Petitioner's Counsel, we explored the line between speech and non-speech. But as I understand your position, it would be the same if what was involved here were words. Am I wrong? If he would put a particular form of words on a wedding cake, on a cake for one customer, he has to put the same form of words, the same exact words, on a wedding cake for any other customer regardless of the context. That's right, just as he would have to sell a happy birthday cake to a member of the Jewish faith or an African-American couple. So if someone came in and said, I want a cake to celebrate our wedding anniversary, and I want it to say, November 9th, the best day in history. Okay? Sells them the cake. Somebody else comes in, wants exactly the same words on the cake, says, oh, is this your anniversary? He says, no, we're going to have a party to celebrate Kristallnacht. He would have to do that. Your Honor, that wouldn't be... Exactly the same words. It is, Your Honor. I haven't, I don't... That would be a question about whether there is an even-handed, genuine policy applied by the baker that doesn't have to do with the identity of the customer. And if it has to do with a message that is a part from the identity of the customer, then he can refuse that. Otherwise, you'd have a circumstance in which he would paint a picture of a couple but wouldn't change the skin tone of the couple that's pictured on the cake. That would be discrimination. And there wouldn't be any First Amendment problem with enforcing our law against that. I have a quick question about the remedy. As I understand it, Colorado ordered Mr. Phillips to provide comprehensive training to his staff. And it didn't order him to attend a class of the government's own creation or anything like that, but to provide comprehensive staff training. Why isn't that compelled speech? And possibly in violation of his free exercise rights, because presumably he has to tell his staff, including his family members, that his Christian beliefs are discriminatory. He... A training requirement is a common remedy that's used in many civil rights cases. But this isn't attending your training. He doesn't have to say that his... Mr. Yarger, again, I agree with you. Some sort of training by an outside group. But this order was ordering him to provide training and presumably compelling him to speak, therefore, and to speak in ways that maybe offend his religion and certainly compel him to speak. And given that, plus the discriminatory language in the commission's discussion, I just... That concerns me, and I just wonder what you have to say. I understand, Your Honour. If all that's required in these training sessions is an understanding and a demonstrated understanding of the Colorado Anti-Discrimination Act, it has nothing to do with a particular person's belief. It has to do with ensuring that the conduct that was found discriminatory, and if that conduct can be regulated consistent with the First Amendment, I think that a training requirement... Part of that speech is that state law, in this case, supersedes our religious beliefs, and he has to teach that to his family. He has to speak about that to his family. He has to speak about the fact that in running a public accommodation that's open to all people, he cannot use his faith to discriminate based on identity. In selling a good, he would otherwise sell. The question is, he doesn't have to tell his family. I mean, his belief is his belief. All he has to instruct them is, this is what the law of Colorado requires. Thank you, Justice Ginsburg. That's precisely correct. Nothing about, I've changed my belief in any way. Absolutely not. That's correct. There are no further questions. Thank you, Counsel. Thank you. Mr. Cole? Mr. Chief Justice, and may it please the Court, we don't doubt the sincerity of Mr. Phillips' convictions, but to accept his argument leads to unacceptable consequences. A bakery could refuse to sell a birthday cake to a black family if it objected to celebrating black lives. A corporate photography studio could refuse to take pictures of female CEOs if it believed that a woman's place is in the home. And a florist could put a sign up on her storefront saying, we don't do gay funerals if she objected to memorializing gay people. Now, both Petitioner and the United States recognize that these results are unacceptable with respect to race. And so they suggest that you draw a distinction between race discrimination and sexual orientation discrimination and the state's ability to protect it. But to do that would be to constitutionally relegate gay and lesbian people to second-class status, even when the state has chosen, as Colorado has done here, to extend them equal treatment. I'm not sure. He provides equal services outside the context of weddings to gay and lesbian individuals. And the racial analogy, obviously, is very compelling. But when the Court upheld same-sex marriage in Obergefell, it went out of its way to talk about the decent and honorable people who may have opposing views and to immediately lump them in the same group as people who are opposed to equality and relations with respect to race. I'm not sure that takes full account of that concept in the Obergefell decision. So, Chief Justice Roberts, the Court in Obergefell did indeed say that individuals are free to express their disagreement through speech with the notion of same-sex marriage. But it did not say that businesses who make a choice to open themselves to the public can then turn away people because they are gay and lesbian. All the baker needed to know about my clients was that they were gay and lesbian, or gay, and therefore he wouldn't sell them a wedding cake, which he would sell, gladly. But your answer to that, I was trying to get the answer to that, and I think that they're proceeding roughly on the line that, well, all that you say is true, but that doesn't mean that under these laws, maybe the African-American, et cetera, is separate, but it doesn't mean that the person could be hired to come to the wedding and announce to the general people there, this is the most wonderful thing I've ever been at. Now, that's where they say they have a right not to do that. And then the second step of that is to say, and what's going on here is the equivalent of that. I took that as, I may be unfair to them, but I took that as the outlines of the answer to what you're saying. So I'd like to hear what you say in respect, if I'm right, about what this is. Yeah, thank you. No one is suggesting that the baker has to march in the parade, as Mr. Francisco said here. What the Colorado law requires is that you sell a product. When a mom goes into a bakery and says, make me a happy birthday cake for my child, and then she takes that cake home for her four-year-old son's birthday party, no one thinks that the baker is wishing happy birthday to the four-year-old. Would that be true if what the message must say, Craig and Mullins said, we'd like to have on this wedding cake of ours these words, God bless the union of Craig and Mullins. So if he would not put that message on any other cake, then he doesn't have to put it on that cake. He would put that message on a cake that said, God bless the union of Ruth and Marty. Right. If he would say that, then he would have to say, God bless the union of Dave and Craig, because the only difference between those two cakes, Your Honor, is the identity of the customer who is seeking to purchase it. It's the same cake otherwise. So yes, if he, but again, in this case. Do we have to answer that question? No, you don't. No, Justice Kagan, you don't. Because in this case, again, the only thing the baker knew about these customers was that they were gay. And as a result, he refused to sell them any wedding cake. There was no request for a design. There was no request for a message. He refused to sell them any wedding cake. And that's identity-based discrimination. It is not a decision to refuse to put particular words. Suppose that either in this case or some cases, you have a very complex case and cake, and you need a baker or a baker's assistant to be right there at the wedding so you cut it in the right place and the thing doesn't collapse. Does the baker have to attend that wedding and help cut the cake? So I think, again. Assume the hypo. Right, right. That is not necessary to decide this case. But I think in a future case that involves physical participation in a religious ceremony that an individual deeply opposed, that this court might create a new doctrine and draw a new line and say, no, that's not governed by Smith. That's not governed by O'Brien. We're going to make an exception. How do we do that? You know, we can't have 42,000 cases, each kind of vegetable that the preparer thinks is something special. So here, is it an answer that satisfies you? Say, well, you see here, of course, all custom goods, all custom goods have an element of expression. An artisan is not quite the same as an artist. But an artisan can be a great artisan and can produce good things. But where the clash is between an important public policy, the policy of opening the doors to everyone, including minorities, in the public commercial area, well, there the speech element of the artisan is not really sufficient to outweigh that. Now, that's pretty straightforward. And I don't know how it fits within the law and the so forth. But if you're looking at the policies here, it seems to me the cases do support that. And they do have to leave open the instance where the speech goes farther than just preparing a specially shaped cake, admitted that a specially shaped cake can suggest approval, et cetera. And if that's not good, what is? So, Justice Breyer, I think the colloquy with my opponent with respect to whether a cake artist is different from a makeup artist or whether a highly sculpted cake is different from an unsculpted cake illustrates that it's just not possible to develop doctrine based on how expressive, how artistic the speech is. All right. Fine. And what do we do? This is what you do, Your Honor. You do what you did in O'Brien, in CCNV, in Fair versus Rumsfeld, in Turner Broadcasting. And what the court has done when it's expressive conduct, because that's what we have here at most, is expressive conduct. We don't ask, is it expressive from the perspective of the baker or is it expressive from the perspective of the customer? We ask, what's the state's interest in regulating? What is the state doing? And if the state is regulating conduct because of what it expresses, well, now that's strict scrutiny. Are the words on the cake expressive conduct or are they not speech? The conduct, Your Honor, that is regulated by Colorado here is not the words on the cake. The conduct that Colorado regulates is the sale by a business that opens itself to the public, invites everybody in. It's regulating the conduct of refusing a transaction to somebody because of who they are. It doesn't matter whether it's speech or whether it's not speech. What you just said, and I understand Mr. Yarger's position for Colorado to be the same, is that someone can be compelled to write particular words with which that person strongly disagrees. That is your position. If he has written the same words for others and the only difference is the identity of the customer, yes. So again, a baker could sincerely believe that saying happy birthday to a black family is different from saying happy birthday to a white family. But we would not say that therefore it's permissible for a baker to say birthday cakes for whites only. There are services, I was somewhat surprised to learn this, but weddings have become so elaborate, that we'll write custom wedding vows for you and custom wedding speeches. So somebody comes to one of these services and says, you know, we're not good with words, but we want you to write vows for our wedding. And the general idea we want to express is that we don't believe in God. We think that's a bunch of nonsense, but we're going to try to live our lives to make the world a better place. And the person who's writing this is religious and says, I can't lend my own creative efforts to the expression of such a message. But you would say, well, it's too bad because you're a public accommodationist. Am I right? What I would say, Your Honor, is that if that case were to arise, it would certainly be open to this court to treat it differently. But this is not a case in which anyone is being asked differently on one principle. What principle would we use to treat it differently? I think the principle would have to be some amendment to Smith v. Employment Division to say that even where there's a generally applicable law, and even where it's neutrally applied, if it has the effect of compelling somebody to engage in a religious ceremony that is against their deep religious commitment, we might treat that differently. But under current law, that would not be the result under Smith v. Employment Division. Is that a modification of Smith? It sounds like an overruling of Smith. Well, I think it would depend on how broadly you wrote it. But I don't think in this case, where all that's asked for is a product, that you have to reach that question. How do you feel under your hypothetical with hotels associated with weddings? Hotels rent out blanket halls of their staff. Would they be entitled to the exception you're imagining? No. Let me make it clear. I am not advocating this exception at all. I am just saying that this case does not involve that kind of participation, so you don't need to address it. If at some point a case arises, then you might. Let's take a case a little bit more like ours, and it doesn't involve words, but just a cake. It is Red Cross, and the baker serves someone who wants the Red Cross to celebrate the anniversary of a great humanitarian organization. Next person comes in, wants the same Red Cross to celebrate the KKK. Does the baker have to sell to the second customer? If not, why not? It's not identity-based discrimination. All that Colorado law and public accommodations law generally requires is that you not discriminate on the basis of particular protected classes, sexual orientation, race, disability, religion, and the like. And if I can go back to Justice Alito's question. Well, why is that any different than our case? You say it's not based on identity. Baker might well say I despise people who adhere to the creed of the KKK. That's one way of characterizing it. Another way of characterizing it is saying I disagree with the message of the KKK. So too here. One could make the exact analogy, I would think, that you could either characterize it as I don't like people of a certain class or I have a religious belief against this kind of union. So how do I distinguish those cases? I think, Your Honor, if identity discrimination is involved, and there's no question that identity discrimination is involved here because, again, the only thing the baker knew was the identity of the people of the KKK. I misunderstood your answer to Justice Gorsuch. Did you say you could refuse to sell the identical cake with the Red Cross? If he is not doing it on the basis of a protected identity, the Ku Klux Klan, as an organization, is not a protected class. So, yes, the Public Foundations Law does not say you must treat everybody. It says you cannot discriminate on the basis of protected categories. This whole concept of identity is slightly confusing. Suppose he says, look, I have nothing against gay people. He says, well, I just don't think they should have a marriage because that's contrary to my beliefs. It's not their identity. It's what they're doing. I think your identity thing is just too facile. Well, Justice Kennedy, this Court faced that question in Bob Jones University. Bob Jones University said we're not discriminating on the basis of race. We allow black people to come into the school. We just refuse to admit those who are engaged in interracial marriages or advocate interracial dating. And this Court said that's race discrimination. That's identity-based discrimination, even if you treat others similarly. But I think one way to think about this case is analogize it to O'Brien. In O'Brien, nobody disputed that O'Brien's burning of the draft card to protest the Vietnam War was expressive. It was core political expression. But what the Court did was it didn't say, well, how expressive is it? Is it artistry? Is it not? Is it core? Is it not? It said, what is the state trying to do here? Because it's expressive conduct. And if the state's seeking to regulate conduct, then the fact that it has an incidental effect on Mr. O'Brien's expression is not a problem, as long as the state has a content-neutral reason for regulating that conduct. I take Justice Gorsuch's question and substitute for the KKK a religious group, bizarre perhaps, but a religious group that unfortunately has the same beliefs as the KKK. Then you can ask a question, and the answer is they do have to sell it. I think if the discrimination is based on a protected characteristic, yes. They can't say because I object to the message that equal treatment sends. Piggy Park objected to the message that equal treatment sent. To serve a black person in a segregated, previously segregated restaurant sent a tremendous message, a message that Piggy Park sincerely, religiously objected to. And this court said that that's a frivolous claim in that context. So I don't think you can carve out exceptions to generally applicable rules that regulate conduct in a content-neutral way, as this does. And so just as the fact that Mr. O'Brien's conduct, burning the draft card, was expressive, did not give him a First Amendment exemption to a content-neutral prohibition on draft card destruction, so the fact that Mr. Phillips considers his cake-baking to be expressive doesn't give him a First Amendment exemption to a content-neutral regulation of public accommodation sales in the retail context. This court has already said that that interest in prohibiting discrimination on the basis of identity in public accommodations is an interest unrelated to the suppression of expression. It said that in Roberts v. Jaycees, it serves compelling interests, Roberts v. Jaycees, even where race is not involved. Is your answer to my hypothetical about the religious legal services organization the same as Mr. Yarger's? I think if Christian legal services, Catholic legal services, sorry, has offered a service to the public generally, let's say it was wills, and a same-sex, someone who died, the survivor of a same-sex couple. You're changing the hypothetical just a little. The services they offered was pro bono legal services to people, whether it's wills or contracts or landlord-tenant, or anything at all. Right. So I don't think they have to, they obviously don't have to argue for a position that they disagree with. But if they provide wills or they provide landlord-tenant to a straight couple, then they have to provide that to a gay couple. So they would, if someone had a problem in connection with their marriage, again, whatever it is, contract, dispute, something like that, they would have to provide representative services to someone who had a similar problem in connection with a same-sex marriage. So I'd say two things, Your Honor. First of all, I think they would if they provided the same services to couples who are straight. But the court might say that when what you're regulating is only speech, not expressive conduct, because remember the O'Brien test, the CCNV test, the fair versus wrong test. But this is not only speech. It's providing the legal services. But the legal services are speech. I don't know what other than speech I'm engaged in, for example, right now. Well, I would say partly expressive conduct. You're engaged in representation before the court, which involves a lot more than simply what you're saying in response to the answers. Well, if you treat, Hurley, I think, illustrates that where the state is regulating only expression, no conduct at all, just a banner that's in the parade, the court takes a different view. But where expressive conduct is involved, and the reason the court takes a different view makes sense, because, again, the analysis this court uses with respect to expressive conduct is, is the state regulating the conduct for some reason other than what it expresses, or is it regulating what it expresses? And when you only have expression, when all that's involved is expression, as was the case with the parade in Hurley, that's different because there's no neutral conduct to be regulated. But here, what we have is the sale of a good, a cake, to an individual. To the extent it's expressive, it's certainly also conduct, and Colorado's interest in ensuring that bakeries and tailors and other public accommodations treat all people equally is a content-neutral interest in ensuring that everybody has a right to participate in the economic life of the community Along the same lines as the Chief Justice's question, would you say that Colorado can compel a religious college whose creed opposes same-sex marriage to provide married student housing for a married same-sex couple or allow a same-sex wedding to be performed in the college chapel? So I think, again, under something like Hosanna-Tabor, there might be religious-based exceptions for core religious institutions, but a bakery that opens itself to the public is not a church. Well, it's not a church. It's an independent educational institution with a religious heritage. And that's what they believe. So I think they would be required to do it. Well, I think under this Court's doctrine in Employment Division v. Smith, the question would be, is it a generally applicable neutral law? And if it's a generally applicable neutral law, there would not be a free exercise question at all. And the reason for that, as Justice Scalia said in Employment Division v. Smith, is equally applicable here. Once you open this up, once you say generally applicable regulations of conduct have exceptions when someone raises a religious objection, or in this case have objections where someone raises a speech objection, you're in a world in which every man is a law unto himself. And so the only sensible way to approach this is to say, if the state is targeting religion, then we're going to be very careful about protecting religion. And if the state is targeting the message, is targeting the content of speech, then we're going to be very careful about protecting. But when the state is regulating conduct neutrally, unrelated to expression, which is what this Court has already said is the case with respect to public accommodations, then we can't have a world in which everybody who raises an objection. Otherwise, we would live in a society in which businesses across this country could put signs up saying, we serve whites only, music lessons for Muslims need not apply, passport photos not for the disabled. Thank you. Thank you, Counsel. Ms. Wagner, five minutes. Ms. Wagner, here the seller of the cakes is not Mr. Phillips, it's Masterpiece Corporation. In your arguments, who controls the expression here, the corporation or its shareholders? I always thought corporations were separate entities. And how do we impute to this corporation, which is just a bakery, doesn't purport to sell just religious items, it's a public place. How do we make this decision with respect to the rights of individuals in a corporation that don't have objections? So can the chef at the Hilton, and I don't mean to demean the Hilton or anybody else, I'm using it as an example, can he say, I don't believe in same-sex marriage and I won't create a cake? And can he be fired? Justice Sotomayor, in the context of your question regarding the Hilton, there may be a religious accommodation that is made to that employee. But in the context of Masterpiece Cake Shop, this court has found that corporations have free speech rights as well as closely family-held corporations have free exercise rights. And Mr. Phillips is also the speaker. But who makes the decision for the corporation? In most situations, it may be easier in a closely-held corporation. It may be the shareholders. I don't know if it's the corporate board or it's the shareholders. Who decides? Well, certainly I think, again, if it's dealing with an employee, the employee certainly decides what they're willing to express. It can't be the employee speaking for the corporation. The employee can be made an agent for the corporation and speak on its behalf. But the employee can't choose it on behalf of the corporation. Certainly. But if we're talking about what the corporation will speak, then the shareholders in a small family-held corporation, the shareholders will decide that. And that's exactly what's at stake in this case. Mr. Phillips owns Masterpiece Cake Shop. He designs most of the wedding cakes himself. Him and his wife, right? Yes, it is. I have three brief points in rebuttal. First of all, the bias of the commission is also evidenced in the unequal treatment of the cake designers, the three other cake designers, who are on the squarely opposite sides of this issue. If the court looks at the analysis that was provided by the Colorado Court of Appeals, line by line, they take the opposite approach to Mr. Phillips that they do to those who are unwilling to criticize the expectations. They would say no to anyone who came with that request? No. The Colorado Court of Appeals said that they could have an offensiveness policy, and they said that those three cake designers were expressing their own message if they had to design that cake. In Mr. Phillips' case, they said it wasn't his message. It's simply compliance with the law. In the other case, they said that the cake designers, because they served Christian customers in other contexts, that that was evidence it was a distinction based on the message. But in Mr. Phillips' case, they ruled the opposite way. Professor Laycock's brief provides a good analysis of that as well. It was filed in this case. Second, the compelled speech doctrine and this re-exercise clause is anchored in the concept of dignity and speaker autonomy. And in this case, dignity cuts both ways. The record is clear on that. Demeaning Mr. Phillips' honorable and decent religious beliefs about marriage when he has served everyone and has a history of declining all kinds of cakes, unaffiliated with sexual orientation because of the message, he should receive protection here as well. This law protects the lesbian graphic designer who doesn't want to design for the Westboro Baptist Church as much as it protects Mr. Phillips. Lastly, political, religious, and moral opinions shift. We know that. And this Court's dedication to compelled speech doctrines and to free exercise should not shift. Counsel, the problem is that America's reaction to mixed marriages and to race didn't change on its own. It changed because we had public accommodation laws that forced people to do things that many claimed were against their expressive rights and against their religious rights. It's not denigrating someone by saying, as I mentioned earlier, to say, if you choose to participate in our community in a public way, your choice. You can choose to sell cakes or not. You can choose to sell cupcakes or not. Whatever it is you choose to sell, you have to sell it to everyone who knocks on your door, if you open your door to everyone. You can respond if you'd like. Justice Sotomayor, I think that the gravest offense to the First Amendment would be to compel a person who believes that marriage is sacred to give voice to a different view of marriage and require them to celebrate that marriage. You can still participate in weddings or create a cake that is neutral, but you don't have to take and offer goods to the public and then choose not to sell to some because of a protected characteristic. That's what the public anti-discrimination laws require. A brief last word, Ms. Wagner. A wedding cake expresses an inherent message, that is that the union is a marriage and is to be celebrated, and that message violates Mr. Phillips' religious convictions. Thank you, Mr. Court. Thank you, counsel. The case is submitted.